IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
Johnson *et al.*,                )
      Plaintiffs,  )
   v.                        )  Civil No. 23-03420 (RBK/MJS)
                                 )
David Mazie, Esq., Adam Slater, Esq. and  )  **Order / Opinion On**
Mazie Slater Katz & Freeman LLC,  )  **MOTION TO REMAND**
      Defendants.  )
                                 )
_____

**KUGLER, United States District Judge**:

  **THIS MATTER HAVING COMING BEFORE** the Court on plaintiffs' ["Johnson"] motion to remand ["the Motion"] (Doc. No. 5) this action back to state court—N.J. Superior Court, Essex County—where it originated;

  **DEFENDANTS [MAZIE] HAVING REMOVED** this action to this Court and opposing remand;

  **THIS COURT HAVING CONSIDERED** the parties' submissions without oral argument pursuant to *L. R. 78.1*, for the reasons stated in the opinion below, and for good cause shown,

  **THE COURT HEREBY ORDERS:** The motion to remand (Doc. No. 5 ) is **DENIED**.

**OPINION**

**1.0  PROCEDURAL BACKGROUND**

This matter arises from a dispute between the parties about the proper amount of attorney fees that should have been awarded to Mazie for their work as plaintiffs' counsel in the Olmesartan Multi-District Litigation ["MDL"].[1]

---

[1] The Olmesartan MDL, consolidated by the Judicial Panel on Multi District Litigation in April 2015, concerned products liability claims regarding certain, serious contraindications of taking the blood pressure medicine Olmesartan, a generic of the brand name drug Benicar®. Generally, the contraindications resembled symptoms of celiac disease in those who ingested the drug for several years: diarrhea, weight loss, persistent gastrointestinal upset, and, for some, hospitalization. In the summer of 2017, the MDL ended in a settlement for the thousands of U.S. consumers who experienced symptoms of varying severity from ingesting Olmesartan. Each person who signed onto the Olmesartan settlement agreement typically had executed a contingency fee agreement with a law firm that would secure for them a portion of the settlement proceeds according to the settlement calculus based on the severity of symptoms. In other words, those who had signed a contingency fee agreement with their law firms paid an agreed-upon percentage to the firms from the Olmesartan settlement award they received.

As a named representative of a putative class action of plaintiffs residing outside of New Jersey, Johnson is suing Mazie for having received a larger amount of attorney fees for their work in the Olmesartan MDL than, Johnson avers, is allowed by New Jersey Court Rule 1:21-7(i).[2]  Johnson seeks to recover the excess of attorneys fees Mazie allegedly received as

---

[2] **Rule 1:21-7. Contingent Fees**
**(a)** As used in this rule the term "contingent fee arrangement" means an agreement for legal services of an attorney or attorneys, including any associated or forwarding counsel, under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.
**(b)** An attorney shall not enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services.
**(c)** In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims and claims among family members that are subject to Part V of these Rules but excluding statutorily based discrimination and employment claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
(1) 33 1/3 % on the first $750,000 recovered;
(2) 30% on the next $750,000 recovered;
(3) 25% on the next $750,000 recovered;
(4) 20% on the next $750,000 recovered; and
(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and
(6) where the amount recovered is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement before empaneling of the jury or, in a bench trial, the earlier to occur of plaintiff's opening statement or the commencement of testimony of the first witness, shall not exceed 25%.
**(d)** The permissible fee provided for in paragraph (c) shall be computed on the net sum recovered after deducting disbursements in connection with the institution and prosecution of the claim, whether advanced by the attorney or by the client, including investigation expenses, expenses for expert or other testimony or evidence, the cost of briefs and transcripts on appeal, and any interest included in a judgment pursuant to R. 4:42-11(b); but no deduction need be made for post-judgment interest or for liens, assignments or claims in favor of hospitals or for medical care and treatment by doctors and nurses, or similar items. The permissible fee shall include legal services rendered on any appeal or review proceeding or on any retrial, but this shall not be deemed to require an attorney to take an appeal. When joint representation is undertaken in both the direct and derivative action, or when a claim for wrongful death is joined with a claim on behalf of a decedent, the contingent fee shall be calculated on the aggregate sum of the recovery.
**(e)** Paragraph (c) of this rule is intended to fix maximum permissible fees and does not preclude an attorney from entering into a contingent fee arrangement providing for, or from charging or collecting a contingent fee below such limits. In all cases contingent fees charged or collected must conform to RPC 1.5(a).
**(f)** If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.
**(g)** Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client. Upon conclusion of the matter resulting in a recovery, the attorney shall prepare and furnish the client with a signed closing statement.
**(h) Calculation of Fee in Structured Settlements.** As used herein the term "structured settlement" refers to the payment of any settlement between the parties or judgment entered pursuant to a proceeding approved by the Court, the terms of which provide for the payment of the funds to be received by the plaintiff on an installment basis. For purposes of paragraph (c), the basis for calculation of a contingent fee shall be the value of the structured settlement as herein defined. Value shall consist of any cash payment made upon consummation of the settlement plus the actual cost to the party making the settlement of the deferred payment aspects thereof. In the event that the party paying the settlement does not purchase the deferred payment component, the actual cost thereof shall be the actual cost assigned by that party to that component. For further purposes of this rule, the party making the settlement offer shall, at the time the offer is made, disclose to the party receiving the

unjust enrichment from the Olmesartan settlement in order to re-distribute those fees back to the putative class of plaintiffs so they presumably obtain the settlement monies they should have gotten.   Specifically, the Johnson Complaint (Doc. No. 1-2 ) asserts these claims, all of which stem from violation of the Rule:

- legal malpractice;

-conversion;

- unjust enrichment;

- improper, double recovery; and

- breach of contract for violating retainer agreements of Olmesartan plaintiffs.

On June 22, 2023, Johnson originally filed this civil action in the Superior Court of New Jersey—Law Division, Essex County.[3]  On June 23, 2023, Mazie removed the state action to federal court based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1); federal question jurisdiction pursuant to 28 U.S.C. § 1331;  *Grable* jurisdiction; supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 and 1441(c). Defendant's Removal Notice¶ ¶ 4, 5, 35, 39, 41 (Doc. No. 1).

On August 21, 2023, Johnson filed the motion, arguing that:
- this Court lacks diversity jurisdiction because even though all plaintiffs are/were legal residents of jurisdictions outside of New Jersey, none of the plaintiffs' recovery amounts from Mazie's excess award would equal $75,000

- this Court lacks federal question jurisdiction because all plaintiffs' claims arise under state product liability laws;

- this Court lacks *Grable* jurisdiction as no claim arises under or embeds federal law;  and

- the Anti-Injunction act does not confer jurisdiction on this Court.

On  October 7, 2023, Mazie opposed the motion (Mazie Opp., Doc. No. 9)  to which, on October 28, 2023, Johnson replied.  Johnson Rep., Doc. No. 16.   All submissions were timely.

## 2.0     LEGAL STANDARD

Under *28 U.S.C. § 1441(a)*, a defendant may remove an action filed in state court to that federal court having original jurisdiction over the action.  Once the action has been removed, a

---

settlement offer its actual cost and, if it does not purchase the deferred payment aspect of the settlement, the factors and assumptions used by it in assigning actual cost.

**(i) Calculation of Fee in Settlement of Class or Multiple Party Actions.** When representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, arise out of the same transaction or set of facts or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each. Counsel may, however, make application for modification of the fee pursuant to paragraph (f) of this rule in appropriate cases

[3] *Johnson, et al. v. Mazie, et al.,* No. ESX-L-004010-23

plaintiff may challenge removal by seeking its remand back to state court. *See 28 U.S.C. § 1447(c)* allowing a case removed to federal court to be remanded back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."

To defeat a movant's motion to remand, the opposing party bears the burden of showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (*citing Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. *See Abels*, 770 F.2d at 29 [*stating*: "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."].

However, when the Court retains ancillary jurisdiction over a matter, the same legal analysis applies as for pendent jurisdiction. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 372–73 (1978). Since the Supreme Court decided *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715 (1966), two requirements for the exercise of pendent jurisdiction have been clear: First, the court must determine whether it has constitutional power to exercise jurisdiction; and second, it must determine whether it should, in its discretion, exercise jurisdiction. *Id.* at 726. When a claim is ancillary to a lawsuit rather than pendent to a federal claim, a similar power requirement as stated in *Gibbs* applies. Clarifying this requirement, the Supreme Court stated in *Aldinger v. Howard*, 427 U.S. 1, 11-12 (1976):

> "The doctrine of ancillary jurisdiction developed in the foregoing cases [Supreme Court reviewed its own jurisprudence on this doctrine] is bottomed on the notion that since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction. As this Court stated in *Fulton Bank v. Hozier*, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925):
>
>> 'The general rule is that when a federal court has properly acquired jurisdiction over a cause, it may entertain, by intervention, dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit.' "

*See also In re Paoli R.R. Yard PCB Litigation*, 435 F.3d 717, 737-738 ( 3rd Cir. 1996) [*demonstrating* that judicial economy can be a sufficient reason for a federal court to retain ancillary

jurisdiction in order to avoid the very real possibility of forum shopping].

### 3.0    DISCUSSION

The current dispute in this case is whether this Court has jurisdiction to resolve the asserted fee dispute:  Mazie has received not only contingency fees from each of its clients who participated in the Olmesartan settlement but also a  common benefit fee award because of its efforts in the MDL as plaintiffs' executive counsel.   Johnson asserts this award amounts to double payment and is in violation of the Rule.

This Court was the transferee court for the Olmesartan MDL, which  awarded the common benefit fees to plaintiffs' counsel for their efforts expended in litigating the MDL. This Court granted the award after reviewing for correctness and reasonableness plaintiff counsels' Final Recommendation and line-item accounting of each plaintiff firm's hours spent in litigating the MDL.  *See In Re* : Benicar® (Olmesartan) Products Liability Litigation, 1:15-md-02606-RBK-JS, Doc. No. 1263.

Important to resolving this motion is that this action is nearly identical to an action previously filed in 2021 by the same plaintiffs' counsel, which, as here, claimed that Mazie violated the Rule because it had received excessive attorneys fees in the form of a common benefit award in the Olmesartan MDL [4]  This Court dismissed with prejudice the previous lawsuit at *Martino v. Mazie,* 21-cv-20056 (RBK-MJS), 2022 WL 1443689 (D.N.J. May 6, 2022). Upon appeal of that decision by Martino's counsel, the Third Circuit affirmed this Court's resolution of the dispute.  We had decided that the common benefit fund award to Mazie was not "double-dipping" but proper remuneration for their legal efforts expended in the Olmesartan MDL over and above any efforts for contingency fee clients.  *See Martino v. Mazie, aff'd,* No. 22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023).  The significant difference between this matter and *Martino v. Mazie* is that Johnson alleges this Court can have no federal matter or diversity jurisdiction over the determination of an excess fee award to Mazie and therefore cannot decide this matter.  The Court sees that both the complaint filed in state court and the motion seek to avoid this Court's similar decision as in Martino:   that the Rule does not apply to  common benefit law efforts of plaintiffs' counsel in MDLs.

More specifically, to gird the remand motion, Johnson (Mot. Brf. at 6, 11, 13, 14, Doc. No. 5)  argues this Court lacks jurisdiction because:
-Mazie failed to show to a legal certainty that each individual plaintiff can recover more than $75,000, thereby securing diversity jurisdiction;

---

[4] *Martino et al. v. Mazie, et al.* 21-cv-20056, Doc. No. 26.

-Mazie also cannot show this matter raises a federal question, which cannot secure this Court's jurisdiction as the claims of all plaintiffs in this putative class turn not on federal, but only on state, law; and

-the Anti-Injunction Act[5] does not confer jurisdiction.

Johnson's contentions that this Court lacks jurisdiction are incorrect and unavailing. Johnson has not foreseen that the underlying dispute—attorneys fees— is an *ancillary* issue to the Olmesartan MDL claims—all product liability issues. Accordingly, this Court has and does retains ancillary jurisdiction over all issues not central to the products liability issues of the MDL, which, without doubt, include the fee dispute here.

By the doctrine of ancillary jurisdiction, federal courts retain jurisdiction over those matters incidental to the central legal matters before them. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994) defining an ancillary suit as

> "[a] bill filed to continue a former litigation in the same court . . . to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties . . . or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court." *Id*. [*citing Julian v. Central Trust Co.*, 193 U.S. 93, 24 S. Ct. 399, 48 L. Ed. 629 (1904)].

Moreover, the Supreme Court has clarified that "a federal court may exercise ancillary jurisdiction… to enable [the] court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996). A federal court retains the power to enforce and consider challenges to settlements entered into in cases originally filed with the court. *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984). *See also Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.) ["Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic."].

Regarding large, multi-district class actions, the Third Circuit has opined that "[a] district court has the power to enforce an ongoing order against re-litigation so as to protect

---

[5] *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"). The Anti–Injunction Act, limits the reach of the All Writs Act. On its face the Anti–Injunction Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions: (1) as expressly authorized by Act of Congress, (2) where necessary in aid of its jurisdiction, or (3) to protect or effectuate its judgments. The three exceptions are to be construed narrowly, and any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed. *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 289 F.Supp.3d 646, 653-654 (E.D. Pa. 2018) [citations omitted].

the integrity of a complex class settlement over which it retained jurisdiction." *In re Prudential Insurance Company of American Sales Practice Litigation,* 261 F.3d 355, 367-68 (3d Cir. 2001) [*affirming* injunction under All Writs Act where "continued litigation of these claims would 'unsettle' what had been thought to be settled" and disrupt procedures approved by the district court]. The *Prudential* Court concluded that district court's authority to execute its ruling "did not end with the entry of the Final Order and Judgment." *Id.* at 368; *see also In re Linerboard Antitrust Litig.*, 361 Fed. Appx. 392 (3d Cir. 2010) [*finding* that the district court erred in concluding it would lose jurisdiction over the case once the class action had ended].

Other circuits have issued similar guidance about the nature of ancillary jurisdiction. For example, the Eighth Circuit has held that "[w]hile a district court's jurisdiction typically ends when a case is closed and judgment entered, a **district court retains ancillary jurisdiction to 'manage its proceedings, vindicate its authority, and effectuate its decrees.**" *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) [citations omitted] [emphasis added].

Of great interest, in a dispute over attorney fees after the settlement of a class action, the Fourth Circuit held that:

> "[T]he district court must have continuing jurisdiction to resolve the dispute in order to protect the continued integrity of its order approving fair and reasonable fees in the first instance. Moreover, just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process."

*Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003). The Fourth Circuit also noted that:

> "[The plaintiff's] claims were factually interdependent with other issues in the [class action] because the amount of attorney's fees paid for work done in connection with the [class action] can effect the fairness and reasonableness of the class action settlement as a whole…[and] preventing [the judge] from deciding whether [the plaintiff] is entitled to attorney's fees for work she allegedly performed in connection with the [class action] would thwart [the judge's] ability to manage the [the class action]. *Ibid.*

This action not only arises from the same facts but also involves substantially the same fee dispute previously decided in *Martino v. Mazie*, brought by the same plaintiffs' counsel on behalf of New Jersey plaintiffs[6] who had participated in the Olmesartan settlement. The key

---

[6] These plaintiffs had been litigants not in the Olmesartan MDL but in the Olmesartan Multi-County Litigation ["MCL"].

difference between *Martino v. Mazie* and this action is the lack of jurisdiction claim.  By way of explanation, in *Martino v. Mazie*, this Court found that Mazie properly had earned a contingency fee for guiding its Olmesartan MCL clients through the Olmesartan settlement.  In addition, Mazie also properly had earned a common benefit award because it was the MDL plaintiffs' executive firm, among others, that had taken depositions, paid for experts, written and submitted to this Court briefs on various issues.  In short, Mazie's common benefit fund award was justifiable remuneration because it had driven the MDL litigation to the settlement.  Put differently, Mazie's litigation efforts in the Olmesartan MDL benefitted every plaintiff in the MDL and every plaintiff in the MCL as well as every individual who, without having filed a lawsuit, agreed to take part in the Olmesartan settlement.

In *Martino v. Mazie*, this Court found nothing in NJ Court Rule 1:21-7(i) that limited Mazie from receiving a common benefit fund award in addition to earning contingency fees from its clients.   This is because the Rule concerns the **Calculation of contingency fees in Settlement of Class or Multiple Party Actions** and does NOT concern common benefit awards, which are taken from settlement amounts to reimburse those firms that have in effect served as counsel to the entire coterie of settling parties.  The Rule rightly calculates a contingency fee amount on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each.  And that is precisely what the Olmesartan settlement fund did:  it paid an amount to each to each participating individual based on the severity of their injuries.  And that's precisely how Mazie was awarded contingency fees: based on the amounts awarded to each individual who signed a contingency fee agreement with Mazie.  The common benefit fund award to Mazie was NOT and can NEVER be deemed a contingency fee amount.  In short, a common benefit fund is not a double contingency fee payment, as the Johnson plaintiffs imply, but a separate, earned fee for prosecuting the MDL litigation.

The bottom line for Johnson and Martino is that this Court never relinquished its ancillary jurisdiction.  Such retention of jurisdiction ensures that disputes over attorneys' fees became settled and confirmed and that the settlement itself remains a stable event, stably safeguarded.  Although Johnson and the putative class of plaintiffs here attempt again to challenge the Olmesartan settlement agreement and the attorney's fees stemming therefrom, Johnson has asserted no argument that disturbs this Court's continuing jurisdiction over ancillary fee issues.  As the Fourth Circuit noted, "just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process." *Pioneer,* 349 F.3d at 753. Having been the Olmesartan MDL transferee court that oversaw the litigation and

settlement as well as the *Martino* attack on the common benefit fund awards, this Court possesses the details of the MDL that no other court has or will have.

### 4.0   CONCLUSION

Accordingly, as this Court retains ancillary jurisdiction over matters relating to the MDL settlement and particularly the attorney fee awards, this Court can only decide that Johnson's motion to remand is denied.

Dated: 27 March 2024                                         /s Robert B. Kugler  
                                                             The Honorable Robert B. Kugler  
                                                             United States District Judge